IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                    CRIMINAL NO. 03-23 ERIE

URSULA ADAMS

CHANGE OF PLEA

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Friday, October 22, 2004.

APPEARANCES:
         CHRISTIAN A. TRABOLD, Assistant United States
         Attorney, appearing on behalf of the Government.

         JOHN J. MEAD, Esquire, appearing on behalf of

the Defendant.


Ronald J. Bench, RMR - Official Court Reporter


2


1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 11:10 a.m., on

4  Friday, October 22, 2004, in Courtroom C.)

5

6          THE COURT:  Would the defendant and counsel please

7  come up to the podium.  Ms. Adams, I'm informed that you wish

8  to change the plea that you previously entered at -- what

9  counts?

10          MR. TRABOLD:  Just Count One, your Honor.

11          THE COURT:  That you previously entered at Count One

12  of Criminal No. 03-23 Erie to a plea of guilty, is that

13  correct?

14        THE DEFENDANT:  Yes, it is.

15        THE COURT:  I'm going to ask you to talk into the

16   microphone and keep your voice up for the court reporter.

17        Before accepting your guilty plea, there are a

18   number of questions that I'm going to ask you to make certain

19   it is a valid plea.  If you don't understand any question,

20   please tell me and I will explain it to you.  If at any time

21   you wish to consult with Mr. Mead, please tell me that, and I

22   will give you time to consult.  I give you these instructions

23   because it is essential to a valid plea that you understand

24   every question before you answer it.  Would you please

25   administer the oath.

3

1        (Whereupon, the Defendant, URSULA ADAMS, was sworn.)

2        THE COURT:  Do you understand that now that you have

3   been sworn, your answers to my questions are subject to the

4   penalties of perjury or of making a false statement if you do

5   not answer truthfully?

6        THE DEFENDANT:  Yes, I do.

7        THE COURT:  Would you please tell me your full name?

8        THE DEFENDANT:  Ursula Lynn Adams.

9        THE COURT:  How old are you?

10       THE DEFENDANT:  Twenty-nine.

11       THE COURT:  How far did you go in school?

12       THE DEFENDANT:  10th grade.

13       THE COURT:  Are you able to communicate in English?

14       THE DEFENDANT:  Yes, I am.

15       THE COURT:  Mr. Mead, have you been able to

16   communicate with your client in English?

17       MR. MEAD:  I have, your Honor.

18       THE COURT:  Have you taken any drugs or medication

19   or have you drunk any alcoholic beverages in the past 24 hours?

20       THE DEFENDANT:  No, I haven't.

21       THE COURT:  Are you now or have you recently been

22   under the care of a physician or a psychiatrist?

23       THE DEFENDANT:  No, I haven't.

24       THE COURT:  Are you now or have you recently been

25   hospitalized or treated for any type of narcotic addiction?

4

1        THE DEFENDANT:  No, I haven't.

2          THE COURT:  Do you understand what's happening here

3   today?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Does either counsel have any doubt about

6   the competence of this defendant to plead guilty at this time

7   to the charge contained in the Indictment; Mr. Trabold?

8          MR. TRABOLD:  No, your Honor.

9          THE COURT:  Mr. Mead?

10         MR. MEAD:  No, your Honor.

11         THE COURT:  I find the defendant is competent.  Do

12  you have counsel with you here today?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  What's his name?

15         THE DEFENDANT:  Mr. Mead.

16         THE COURT:  Okay.  Have you had a sufficient

17  opportunity to discuss your case with him?

18         THE DEFENDANT:  Yes, I have.

19         THE COURT:  Are you happy with the work that Mr.

20  Mead has done for you?

21         THE DEFENDANT:  Yes, I am.

22         THE COURT:  Do you understand that if you continue

23  to plead not guilty and do not change your plea, you would have

24  the right to be assisted by an attorney at the trial of the

25  charge against you?

5

1        THE DEFENDANT:  Yes, I do.

2        THE COURT:  Do you understand that if you did not

3  enter a guilty plea and that if you qualified financially, you

4  would be entitled to be assisted by an attorney at no cost to

5  you at every phase of the processing of the charge against you?

6        THE DEFENDANT:  Yes, I do.

7        THE COURT:  Do you understand that if you did not

8  plead guilty and that if there were a trial, under the

9  Constitution and laws of the United States, you would be

10  entitled to a speedy trial by a judge and jury on the charge

11  contained in the Indictment?

12        THE DEFENDANT:  Yes, I do.

13        THE COURT:  Do you understand that if there were a

14  trial, you would be presumed to be innocent at the trial of the

15  charge against you?

16        THE DEFENDANT:  Yes, I do.

17        THE COURT:  Do you understand that if there were a

18  trial, the government would be required to prove your guilt by

19  competent evidence and beyond a reasonable doubt before you

20  could be found to be guilty?

21      THE DEFENDANT:  Yes, I do.

22      THE COURT:  And do you understand that if there were

23  a trial, you would not have to prove that you were innocent?

24      THE DEFENDANT:  Yes, I do.

25      THE COURT:  Keep your voice up just a little bit.


6


1  Do you understand that if there were a trial, the jury would

2  have to be unanimous in order to find you guilty of the charge?

3      THE DEFENDANT:  Yes, I do.

4      THE COURT:  Do you understand that if there were a

5  trial, you would have the right to participate in the selection

6  of the jury; that you would have the right to strike or

7  eliminate any prospective juror if it was demonstrated that the

8  juror would be unable to render a fair and impartial verdict;

9  and that you would have the right to strike or eliminate ten

10  jurors from the jury, and one alternate, without giving any

11  reason at all for so doing?

12        THE DEFENDANT:  Yes, I do.

13        THE COURT:  Do you understand that if there were a

14   trial, the witnesses for the government would have to come to

15   court and they would have to testify in your presence?

16        THE DEFENDANT:  Yes, I do.

17        THE COURT:  Do you understand that if there were a

18   trial, your counsel could cross-examine the witnesses for the

19   government, object to evidence offered by the government and

20   then offer evidence on your behalf?

21        THE DEFENDANT:  Yes, I do.

22        THE COURT:  Do you understand that if there were a

23   trial, the government would have to pay witness fees to

24   witnesses which you wished to call on your behalf, if you

25   qualified as being financially unable to pay those fees?


                              7


1         THE DEFENDANT:  Yes, I do.

2         THE COURT:  Do you understand that if there were a

3    trial, you would have the right to testify if you chose to?

4         THE DEFENDANT:  Yes, I do.

5         THE COURT:  Do you understand that if there were a

6  trial, you would have the right not to testify and that no

7  inference or suggestion of guilt could be drawn from the fact

8  that you did not testify?

9       THE DEFENDANT:  Yes, I do.

10      THE COURT:  If you plead guilty and I accept your

11  plea, do you understand that you will waive your right to a

12  trial and those other rights I have just mentioned to you,

13  there will be no trial and that I will enter a judgment of

14  guilt and sentence you on the basis of your guilty plea after

15  considering a presentence report?

16      THE DEFENDANT:  Yes, I do.

17      THE COURT:  If you plead guilty, do you understand

18  that you will also have to waive your right not to incriminate

19  yourself, because I will ask you questions about what you did

20  in order to satisfy myself that you are guilty as charged and

21  that you will have to acknowledge your guilt?

22      THE DEFENDANT:  Yes, I do.

23      THE COURT:  Now that I have mentioned your rights to

24  you, do you still wish to plead guilty?

25      THE DEFENDANT:  Yes, I do.

1          THE COURT:  Have you received a copy of the

2   Indictment naming you and have you discussed with your counsel

3   the charge in the Indictment to which you intend to plead

4   guilty today?

5          THE DEFENDANT:  Yes, your Honor.

6          MR. TRABOLD:  Your Honor, just so you're aware, the

7   same factual basis that I shared with you for Mr. Lauer is also

8   the same for Ms. Adams.

9          THE COURT:  From fifty to five grams?

10          MR. TRABOLD:  Correct.

11          THE COURT:  And Ms. Adams is only charged in Count

12   One, is that right?

13          MR. TRABOLD:  Correct.

14          THE COURT:  All right.  Do you understand that you

15   are charged in Count One as follows:  "From in and around

16   February, 2003, to in and around March, 2003, in the Western

17   District of Pennsylvania, the defendants, Robert Lauer, Corey

18   White and Ursula Adams, did knowingly, intentionally and

19   unlawfully conspire with others, both known and unknown to the

20   grand jury, to manufacture five grams or more of a mixture and

21  substance containing a detectable amount of methamphetamine, a

22  Schedule II controlled substance, contrary to the provisions of

23  Title 21, United States Code, Sections 841(a)(1) and 841

24  (b)(1)(B)(viii).

25          In violation of Title 21, United States Code,


                                9


1  Section 846." Do you understand the charge?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Do you understand that as to Count One

4  in order for the crime of conspiracy to manufacture a

5  controlled substance (methamphetamine) to be established, the

6  government must prove all of the following essential elements

7  beyond a reasonable doubt.

8          One.  That two or more persons came to a mutual

9  understanding or agreement to try to accomplish a common and

10  unlawful plan to manufacture the controlled substance charged

11  in the Indictment.

12          Two.  That the defendant knowingly and willfully

13  became a member of such conspiracy.

14          Three.  That methamphetamine is a Schedule II

15  narcotic drug controlled substance.

16          And, four, that the conspiracy had the specific

17  unlawful purpose of manufacturing five grams or more of a

18  mixture and substance containing a detectable amount of

19  methamphetamine.

20          Do you understand the elements of this crime?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  Do you understand the maximum penalty

23  for a violation of Count One is as follows:

24          A term of imprisonment of not less than five years,

25  to a maximum of 40 years;

                                10

1           A fine not to exceed $2 million;

2           A term of supervised release of at least four years.

3           For a second or subsequent narcotic drug controlled

4   substance felony conviction that is final, whether federal,

5   state or foreign, a term of imprisonment of not less than 10

6   years, to a maximum of life; a fine not to exceed $4 million;

7   and a term of supervised release of at least eight years.

8           As well as a mandatory special assessment of $100.

9        Do you understand the maximum penalty here?

10        THE DEFENDANT:  Yes, I do.

11        THE COURT:  Has anybody made any threat to you or to

12  anyone else that has caused you in any way to plead guilty?

13        THE DEFENDANT:  No.

14        THE COURT:  Has there been a plea agreement, Mr.

15  Trabold?

16        MR. TRABOLD:  Yes, your Honor, I've marked it

17  Government's Exhibit 1, and counsel and Ms. Adams have signed

18  the agreement already.  It indicates in its most pertinent

19  provisions that Ms. Adams will plead guilty to Count One.

20        There are also numerous provisions in the plea

21  agreement related to Ms. Adams' cooperation with the government

22  in an ongoing investigation of violations of federal drug laws.

23        In addition, Ms. Adams waives any right to have the

24  facts upon which her sentence is based and as charged in the

25  Indictment or determined by a jury beyond a reasonable doubt.


11


1  And she agrees that the facts upon which her sentence is based,

2  under the Sentencing Guidelines, will be determined by your

3   Honor by a preponderance of the evidence.

4       Additionally, your Honor, Ms. Adams agrees to waive

5   her rights to take a direct appeal from her conviction or

6   sentence, with a few exceptions.

7       Namely, she does not have to waive her right to

8   appeal if the government files a direct appeal.  Or if the

9   court's sentence exceeds the applicable statutory limits, or

10  the court erroneously departed upward from the guidelines.

11      Additionally, Ms. Adams waives her right under Title

12  28, United States Code, Section 2255, to file any habeas

13  petitions or to collaterally attack her conviction or sentence.

14      In exchange, your Honor, the government agrees that

15  it will take under consideration a filing of a motion taking

16  into account her cooperation in this case as it relates to any

17  possible reduction of sentence.

18      Additionally, the government agrees to recommend a

19  three-point reduction in offense level for Ms. Adams' timely

20  acceptance of responsibility.

21      Finally, your Honor, the parties have entered into a

22  stipulation in this case that the amount of pseudoephedrine

23  attributable to Ms. Adams as a result of her involvement in the

24  conspiracy is at least 10 grams but less than 40 grams.

25          THE COURT:  All right.  Has that been executed, Mr.


                            12


1  Trabold?

2          MR. TRABOLD:  Yes, your Honor.

3          THE COURT:  Ms. Adams, prior to coming to court

4  today, did you have an opportunity read and review the plea

5  agreement?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Did you discuss it with Mr. Mead?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And then did you sign it?

10          THE DEFENDANT:  Yes, I did.

11          THE COURT:  Do you understand that by signing it,

12  you are attesting to the fact that you agree with all of its

13  terms and conditions?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And you do agree with it, is that right?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  The plea agreement is admitted.  Has

18  anyone made any promise, other than the plea agreement, that

19  has caused you to plead guilty?

20          THE DEFENDANT:  No.

21          THE COURT:  Do you understand that I'm not required

22  to accept the plea agreement that you have entered into and may

23  reject it.  If I do reject the plea agreement, you would be

24  advised in open court and have the opportunity to withdraw your

25  guilty plea.  If the plea agreement is rejected, you may

13

1  nevertheless continue in your plea of guilty, and if you

2  persist in your plea of guilty after the plea agreement is

3  rejected, your sentence or the disposition of your case may be

4  less favorable to you than that proposed in the plea agreement;

5  do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Do you understand that the offense to

8  which you are pleading guilty today is a felony offense; that

9  if your plea is accepted, you will be adjudged guilty of that

10  offense and that such adjudication may deprive you of valuable

11  civil rights, such as right to vote, hold public office, the

12  right to serve on a jury and the right to possess any type of

13  firearm?

14        THE DEFENDANT:  Yes, I do.

15        THE COURT:  Under the Sentencing Reform Act of 1984,

16  the United States Sentencing Commission has issued guidelines

17  for judges to follow in determining sentences in criminal cases

18  for offenses occurring after November 1, 1987.  Have you and

19  Mr. Mead talked about how the Sentencing Guidelines may apply

20  to your case?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Do you understand that the court will

23  not be able to determine the guideline sentence for your case

24  until after the presentence report has been completed and you

25  and the government have had an opportunity to challenge the

14

1  facts reported by the probation officer?

2        THE DEFENDANT:  Yes, I do.

3        THE COURT:  Do you understand that after it has been

4  determined what guideline sentence applies to a case, the judge

5  does have the authority in some circumstances to impose a

6  sentence that is more severe or less severe than that called

7  for by the guidelines?

8         THE DEFENDANT:  Yes, I do.

9         THE COURT:  Do you understand that under certain

10  circumstances you or the government may have the right to

11  appeal any sentence that I impose?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  Do you understand that parole has been

14  abolished, and that if you are sentenced to a term of

15  imprisonment, you will not be released on parole?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  Do you understand that if the sentence

18  is more severe than you expected, you will still be bound by

19  your guilty plea and that you will have no right to withdraw

20  it?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  Except for your discussions with your

23  attorney about the Sentencing Guidelines, has anybody made any

24  prediction or promise to you about what your sentence will be?

25         THE DEFENDANT:  No, they haven't.

15

1          THE COURT:  Has anything I have said here today

2     suggested to you what your actual sentence will be?

3          THE DEFENDANT:  No.

4          THE COURT:  Have you been instructed by your

5     counsel, by government counsel, or by anybody else to respond

6     untruthfully to any question about a promised sentence?

7          THE DEFENDANT:  What?

8          THE COURT:  Do you want me to repeat that?

9          THE DEFENDANT:  Yeah.

10          THE COURT:  Have you been instructed by Mr. Mead, by

11     Mr. Trabold, or by anybody else to respond untruthfully to any

12     question I ask you about a promised sentence?

13          THE DEFENDANT:  No.

14          THE COURT:  Did you, then, as charged in Count One,

15     and as previously read to you by me commit the offense as

16     charged?

17          THE DEFENDANT:  Yes, I did.

18          THE COURT:  All right.  What would be the

19     government's proof here, Mr. Trabold?

20          MR. TRABOLD:  Your Honor, the government's proof

21     would be that on March 25, 2003, Corey White's probation

22  officer, assisted by several Pennsylvania State Police

23  Troopers, traveled to Mr. White's residence for the purpose of

24  serving an arrest warrant.

25        Upon arrival, the probation officer immediately

16

1  entered the residence and noticed a very strong chemical odor,

2  numerous items indicative of a methamphetamine production lab,

3  and several other items.

4        At the same time a state trooper noticed through an

5  open door an individual, later identified as Robert Lauer,

6  sleeping in a camper in the backyard of the property.  Right

7  next to a beaker with liquid that was boiling on a hot plate.

8  It was subsequently determined by the Pennsylvania State Police

9  Clandestine Lab Response Team that the beaker with boiling

10  liquid was part of a working methamphetamine lab.

11        Based upon the information from the probation

12  officer and the state trooper who discovered Robert Lauer, a

13  search warrant was obtained, which resulted in the seizure of

14  methamphetamine and numerous items, including listed chemicals

15  integral to the manufacture of methamphetamine.  Also, in this

16  case the amount of pseudoephedrine attributable to Ms. Adams'

17  conduct would be more than 10 grams and less than 40 grams.

18      Ms. Adams, who was present in the house when the

19  probation officer initially entered, was interviewed by law

20  enforcement authorities and admitted that she had assisted

21  Robert Lauer and Corey White in the manufacture of

22  methamphetamine by doing a process of what she termed doing

23  matches, which is a process by which the striker plate on the

24  matches is scratched off so that red phosphorous can be

25  obtained.  That is a key ingredient in the production of


                              17


1  methamphetamine.  That would be the nature of the government's

2  evidence, your Honor.

3      THE COURT:  All right.  Ms. Adams, you just heard

4  what Mr. Trabold said by way of a summary, do you agree with

5  everything he said?

6      THE DEFENDANT:  Yes, I do.

7      THE COURT:  Do you still want to plead guilty?

8      THE DEFENDANT:  Yes, I do.

9      THE COURT:  Is it your advice that she do so, Mr.

10   Mead?

11       MR. MEAD:  It is, your Honor.

12       THE COURT:  Because you acknowledge that you are in

13   fact guilty as charged in Count One, because you know about

14   your right to a trial, because you know what the maximum

15   possible penalty is, and because you are voluntarily pleading

16   guilty, I will accept your guilty plea and enter a judgment of

17   guilty on your plea to Count One of Indictment No. 03-23 Erie.

18       It is therefore the finding of the court in the case

19   of United States v. Ursula Adams, that this defendant is fully

20   competent and capable of entering an informed plea, and that

21   her plea of guilty is a knowing and voluntary plea supported by

22   an independent basis in fact containing each of the essential

23   elements thereof and therefore the plea is accepted and the

24   defendant is now adjudged guilty of the charge.

25       Would you please have Ms. Adams and counsel sign the


                                18


1   change of plea.

2       (Whereupon, the Change of Plea was executed by the

3   Defendant and Defense Counsel.)

4          MR. TRABOLD:  Just so the record is as clear as

5   possible, your Honor, as it relates to Count One of the

6   Indictment, which is the count that Ms. Adams just pled to,

7   the government has agreed to reduce the amount alleged in the

8   conspiracy from 50 grams to 5 grams.  Not in any way related to

9   any anticipated cooperation of Ms. Adams, but just simply

10  because that's what the facts of this case bear out.  That the

11  conspirators conspired to produce five grams or more of

12  methamphetamine.

13          THE COURT:  So, essentially, fifty was just a typo,

14  is that what it was?

15          MR. TRABOLD:  Correct.

16          THE COURT:  Then the record does reflect that.

17          MR. TRABOLD:  Also, just so the record is as clear

18  as possible, the maximum sentences that you shared with Ms.

19  Adams are the sentences applicable to the five gram amount.

20          THE COURT:  All right.  And insofar as -- who was

21  the other defendant, Corey White?

22          MR. TRABOLD:  Mr. White.

23          THE COURT:  Did you do anything special on that?

24          MR. TRABOLD:  I did not mention that to the court.

25  But the maximum amounts that you shared with Mr. White during

19

1  the course of the plea colloquy and the amount that he actually

2  will be sentenced on reflects the five gram amount.

3         THE COURT:  So we're good all the way around.

4         Ms. Adams, a presentence report will be prepared by

5  the probation officer, it is in your best interests to

6  cooperate with him in furnishing information for the report,

7  because that report is going to be important in my decision

8  about what your sentence will be.  You and your counsel will

9  have the right and the opportunity to examine that report

10  before sentencing.

11        Disposition of sentencing in this case is set for

12  January 4th at 11 a.m. in this courtroom.  All right, we're

13  adjourned.

14

15        (Whereupon, at 11:25 a.m., the Change of Plea

16  proceedings were concluded.)

17

18                    - - -

19

20

21

22

23

24

25

20

1          C E R T I F I C A T E

2

3

4

5     I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11   _____

12   Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25